<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES J. McCOY,<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF NEW JERSEY; NEW JERSEY STATE POLICE; DANIEL EVANKOW; PATRICK J. CALLAHAN; JOHN and JANE DOE 1-10 and ABC-XYZ CORP. (said names being unknown and fictitious),<br><br>*Defendants*. | Civil No.: 2:21-cv-13720 (KSH) (CLW)<br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

Plaintiff James McCoy has brought this civil rights action against defendant Daniel Evankow, a State Trooper who arrested him for driving while intoxicated ("DWI"). After this Court dismissed McCoy's earlier complaint, which asserted claims against the State of New Jersey and another officer in his official capacity (D.E. 22), McCoy filed an amended complaint against Evankow in his personal capacity. (D.E. 24.) After the parties engaged in discovery, Evankow moved for summary judgment. (D.E. 44.) The motion has been fully briefed, and is granted for the reasons set forth below.

**II.     Facts and Procedural History**

At approximately 10:15 a.m. on June 11, 2019, Evankow observed McCoy speeding 12 miles-per-hour over the posted speed limit while driving northbound on U.S. Route 9 in Port Republic, New Jersey. (D.E. 52, FPTO § 2, Stipulated Facts, ¶¶ 3-4; D.E. 44-2, Def. R. 56.1 Stmt.

¶¶ 6-7.)[1]  Evankow activated the overhead lights on his police cruiser and after McCoy pulled over, he went to McCoy's driver's window.  (D.E. 44-2, Def. R. 56.1 Stmt. ¶¶ 8-9.)  Evankow asked for McCoy's driver's license, insurance card, and vehicle registration.  (*Id.* ¶ 9.)  He told McCoy that he stopped him because he was speeding.  (*Id.* ¶ 10.)  McCoy answered that he wasn't sure how fast he was going because his speedometer was broken.  (*Id.*; D.E. 44-5, Deposition of James McCoy ("McCoy Dep.") at 17:14-18:16.)

McCoy told Evankow he was driving home from Atlantic City.  (D.E. 44-2, Def. R. 56.1 Stmt. ¶ 11.)  Evankow asked McCoy when he last had an alcoholic drink, to which McCoy replied, "yesterday afternoon."  (*Id.*)  A few minutes into the stop, Evankow conducted a Horizontal Gaze Nystagmus ("HGN") test[2] to assess if McCoy was under the influence.  (*Id.* ¶ 12; D.E. 52, FPTO § 2, Stipulated Facts, ¶ 5.)  He observed that McCoy's eyes jerked while moving from left to right.  (D.E. 44-2, Def. R. 56.1 Stmt. ¶¶ 14-15.)  He again asked McCoy when he last had a drink, and McCoy responded, "yesterday afternoon."  (*Id.* ¶ 15.)

Evankow told McCoy to get out of his car for field sobriety tests.  (*Id.* ¶ 16.)  Evankow conducted another HGN test and observed that McCoy's eyes again jerked while moving from left to right.  (*Id.* ¶ 19.)  Evankow asked, "[B]e honest with me, how many drinks have you had?"  McCoy replied, "[N]ot today, at all, just nervous."  (*Id.* ¶ 17.)  Evankow again asked when McCoy

---

[1]  References to the parties' L. Civ. 56.1 statements are to facts that are undisputed and/or admitted.  The Court deems facts that are not supported by appropriate citations to the record to be undisputed.  *See* L. Civ. R. 56.1, Cmt. f ("Consequences of noncompliance"); *Bulboff v. King Aircraft Title, Inc.*, 2021 WL 1186822, at *1 (D.N.J. Mar. 30, 2021) (Kugler, J.).

[2]  According to Evankow, the HGN test requires a suspected DWI driver to follow an object with his or her eyes, here Evankow's pointer finger, while the object moves from left to right.  (D.E. 44-2, Def. R. 56.1 Stmt. ¶¶ 13-14; D.E. 44-3, Certification of Daniel Evankow ("Evankow Cert.") ¶¶ 12-15.)  "If the suspect is unable to smoothly do so, that is one indicator that the suspect may be intoxicated."  *State v. Stein*, 225 N.J. 582, 588 n.2 (2016) (citation omitted).

last had a drink, and McCoy changed his story by answering that he stopped drinking around "one o'clock in the morning." (*Id.*)

Next, Evankow instructed McCoy to perform a walk-and-turn sobriety test by walking nine steps heel to toe, turning around, and walking nine steps back heel to toe. (D.E. 44-2, Def. R. 56.1 Stmt. ¶ 20.) He observed McCoy "exhibited signs of intoxication in that he (1) swayed in the starting position; (2) used his arms for balance; (3) delayed while turning; and (4) missed touching his heel to his toe on several occasions." (*Id.*) Evankow then explained the one-legged-stand sobriety test to McCoy, instructing him to stand with his heels together and lift one of his legs six inches off the ground until he was told to stop. (*Id.* ¶ 21.) He observed that McCoy "showed signs of intoxication during this test by: (1) hopping on his foot; (2) shifting his foot; and (3) put his foot down before he was instructed to do so, terminating the test." (*Id.*) Evankow conducted a final HGN test, where he again observed McCoy's eyes did not smoothly follow his finger from left to right. (*Id.* ¶ 22.)

Evankow put McCoy under arrest and read him his *Miranda* rights. (*Id.* ¶ 23; D.E. 52, FPTO § 2, Stipulated Facts, ¶ 6.) McCoy testified at his deposition that when he was arrested and handcuffed, Evankow had the handcuffs on "a little tight," but that he currently has no pain or injury to his wrist. (D.E. 44-2, Def. R. 56.1 Stmt. ¶¶ 25-26; McCoy Dep. at 24:6-25:7, 40:12-14.) At the police station, McCoy was breathalyzed to see whether he was under the influence of alcohol; he was not. (D.E. 52, FPTO § 2, Stipulated Facts, ¶ 11.) McCoy was then issued a summons for speeding five miles over the speed limit and released from custody. (*Id.* ¶¶ 12-13.) The charge was later dismissed by a local prosecutor. (D.E. 44-2, Def. R. 56.1 Stmt. ¶ 31.) In connection with his arrest, McCoy's vehicle was seized, towed, searched, and sent to a towing yard. (*Id.* ¶¶ 24, 28.)

3

On June 9, 2021, McCoy filed a complaint in state court against the State of New Jersey, New Jersey State Police, Evankow, Colonel Patrick J. Callahan, and other fictious individual and entity defendants, alleging civil rights violations among other claims. (D.E. 22, Opinion at 1-3.) The case was removed (D.E. 1), and this Court dismissed the civil rights claims against all defendants except for Evankow in his personal capacity. (D.E. 22, Opinion at 7.) McCoy filed the operative amended complaint alleging the following claims against Evankow individually: unreasonable search and seizure under the Fourth Amendment, in violation of 42 U.S.C. § 1983 (count 1); violation of equal protection rights[3] under the Fourteenth Amendment (count 2); violation of civil rights under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6- 2 *et seq.* (count 3); common law battery (count 4); malicious prosecution and unlawful detainer (count 5); and "performance related deficiencies" (count 6). (D.E. 24.)

Evankow answered, denying liability and asserting the defense of qualified immunity. (D.E. 25.) After discovery, Evankow moved for summary judgment on all counts. (D.E. 44.) McCoy filed an opposition, (D.E. 45), and Evankow replied, (D.E. 51).

### III.    Standard of Review

Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013), and a dispute is

---

[3] McCoy has not alleged any facts to plead an equal protection claim, so the Court will grant summary judgment to Evankow as to count 2. *See Pettit v. New Jersey*, 2011 WL 1325614, at *9 (D.N.J. Mar. 30, 2011) (Hillman, J.) (granting summary judgment on the plaintiffs' equal protection claim where they failed to "plead the existence of purposeful discrimination" or "offer any evidence indicating [the defendant] treated them differently from other individuals similarly situated").

4

"genuine" if the evidence would permit a reasonable jury to find for the non-movant, *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). However, "where a non-moving party fails sufficiently to establish the existence of an essential element of its case . . . , there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016)).

At this stage, the facts are to be viewed in the "light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn from the record.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010)). The Court will not weigh evidence or determine credibility, but instead will assess "whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Reedy*, 615 F.3d at 210 (citation omitted).

## IV. Discussion

### A. Civil Rights Claims (Counts 1 and 3)

Evankow argues that he is entitled to summary judgment on McCoy's federal and state civil rights claims since he had reasonable suspicion to stop McCoy and probable cause to arrest him. (D.E. 44 at 9-16.) McCoy responds that Evankow (1) did not have reasonable suspicion for the traffic stop because the speeding ticket was later dismissed by a local municipal prosecutor and (2) did not have probable cause to arrest him for DWI because the breathalyzer at the police station showed he was not actually under the influence of alcohol. (D.E. 45 at 6-8.)

Section 1983 creates a private right of action for violations of civil rights under the United States Constitution. *See* 42 U.S.C. § 1983. Further, "[t]his district has repeatedly interpreted NJCRA analogously to § 1983." *Pettit*, 2011 WL 1325614, at *3 (collecting cases).

It is well-settled that a routine traffic stop is constitutional when it is supported by reasonable suspicion, that is, "'specific, articulable facts' to justify a reasonable suspicion to believe that an individual has violated the traffic laws." *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). Any technical violation of a traffic code—for example, speeding in excess of the posted speed limit—legitimizes a stop. *United States v. Wilson*, 960 F.3d 136, 145 (3d Cir. 2020). Further, "an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place." *Delfin-Colina*, 464 F.3d at 398. Here, the Court finds that Evankow reasonably believed that McCoy was speeding in violation of N.J.S.A. § 39:4-98, as he alleges that the basis for the traffic stop was that McCoy was traveling 12 miles-per-hour over the posted speed limit. Significantly, McCoy does not dispute that he was speeding. According to his deposition testimony, he was unaware how fast he was traveling because his speedometer was broken. (McCoy Dep. at 17:14-18:16.) There is no record evidence, then, to dispute Evankow's position that McCoy was speeding, and he had reasonable suspicion to stop McCoy.

Evankow also had reasonable suspicion to extend the stop, upon his belief that McCoy might be intoxicated, giving rise to probable cause to arrest McCoy for DWI. Again, the law is settled. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "Probable cause is determined by analyzing the totality of the circumstances in assessing the events leading up to the arrest and viewing the facts from the standpoint of an objectively reasonable police officer." *Morrison v. City of Jersey City*, 2024 WL 4318601, at *4 (D.N.J. Sept. 26, 2024) (Neals, J.) (internal quotation marks and

citation omitted). It is immaterial "whether the person arrested in fact committed the offense," rather, the proper inquiry is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).

Here, Evankow performed textbook step-by-step testing of a suspect he thought to be under the influence of drugs or alcohol, and relied on his observations from that testing while in the field. The undisputed facts show that Evankow conducted three HGN tests, at different points in the stop, and gave reasonable grounds for his belief that McCoy performed poorly on all three. During the walk-and-turn field sobriety test, Evankow observed that McCoy swayed in the starting position, used his arms for balance, delayed while turning, and missed touching his heel to toe; during the one-legged-stand test, Evankow observed that McCoy hopped on his foot, shifted his foot, and put his foot down prematurely; and Evankow observed that McCoy changed his story as to when he last had an alcoholic drink from "yesterday afternoon" to "one o'clock in the morning." The foregoing supplies a basis for Evankow's decision to arrest McCoy for DWI, and the record evidence is devoid of a factual basis for McCoy's claim that he suffered a deprivation of his civil rights.

Evankow is therefore entitled to summary judgment on counts 1 and 3.

**B. Tort Claims (Counts 4, 5, and 6)**

Evankow next argues that he is entitled to summary judgment on McCoy's tort claims of common law battery, malicious prosecution, unlawful detainer, and "performance related deficiencies" since (1) McCoy has not met the $3,600 medical expense threshold required under the New Jersey Tort Claims Act ("TCA") for damages resulting from an injury and (2) the existence of probable cause for McCoy's speeding ticket and arrest defeats these claims. (D.E.

7

44 at 22-30.) McCoy responds that even if the harm he suffered from the handcuffs was de minimis, the severity of a physical injury is just one consideration in an excessive force claim. (D.E. 45 at 8.)

The TCA provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.
>
> [N.J.S.A. § 59:9-2(d).]

Here, the record is devoid of any evidence that McCoy incurred any medical expenses, let alone the minimum $3,600 requirement of the TCA, for injuries resulting from his stop and arrest. At his deposition, McCoy testified that he did not receive any medical treatment and has no permanent—or any—injury to his wrists. (McCoy Dep. at 24:10-18, 40:12-24.) McCoy also testified that Evankow did not hurt him besides placing his handcuffs too tight. (*Id.* at 24:6-25:7.) And while McCoy testified that he was harmed psychologically due to his arrest, he does not allege to have incurred any medical expenses for psychological treatment. (*Id.* at 32:17-33:25, 39:23-40:6.)

To maintain an action in tort when the threshold requirements of N.J.S.A. § 59:9-2(d) are not met, McCoy must prove that the officer's conduct "constituted a crime, actual fraud, actual malice or willful misconduct." *Apata v. Howard*, 2008 WL 4372917, at *14-15 (D.N.J. Sept. 23, 2008) (Irenas, J.) (quoting N.J.S.A. § 59:3-14)). "In the context of the Tort Claims Act, willful misconduct is defined as the knowing commission of a forbidden act, a level of culpability requiring much more than an absence of good faith and much more than negligence." *Id.* at *15 (internal quotation marks and citation omitted). There is no evidence in the record that

8

Evankow's conduct of fastening the handcuffs on McCoy rises to this level, so McCoy cannot maintain his action for battery under New Jersey common law.

Further, "[p]robable cause is an absolute defense to claims for false arrest, false imprisonment, illegal search and seizure, and malicious prosecution." *See Morrison*, 2024 WL 4318601, at *4 (internal quotation marks omitted) (quoting *Herman v. City of Millville*, 66 F. App'x 363, 365 n.3 (3d Cir. 2003)).  McCoy appears to allege that Evankow lacked probable cause to issue him a summons for speeding five miles over the speed limit due to Evankow's comment that he "ha[d] to give [McCoy] a ticket for something." (McCoy Dep. at 35:1-14.)

Malicious prosecution requires McCoy to prove:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.
>
> [*Elfar v. Twp. of Holmdel*, 2024 WL 415691, at *5 (D.N.J. Feb. 5, 2024) (Kirsch, J.) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003); *Curry v. Yachera*, 835 F.3d 373, 379-80 (3d Cir. 2016)).]

The Court finds that Evankow had probable cause to issue McCoy a speeding ticket, since Evankow certified that was the basis of the stop, and McCoy himself does not dispute that he was speeding. (Evankow Cert. ¶¶ 4, 7-8; McCoy Dep. at 17:14-18:16.)  Likewise, McCoy's claims of unlawful detainer[4] and "performance related deficiencies" must also fail, due to the Court's finding that Evankow had probable cause to arrest McCoy for DWI.  Further, the Court notes that although the charge against McCoy was ultimately dismissed, this victory alone does

---

[4] The Court interprets McCoy's unlawful detainer claim as one for false arrest or false imprisonment, which requires him to prove an arrest or detention of the person against his or her will, and lack of proper legal authority or "legal justification." *Barletta v. Golden Nugget Hotel Casino*, 580 F. Supp. 614, 617 (D.N.J. 1984) (Cohen, J.).

9

not entitle McCoy to maintain civil rights or tort claims against his arresting officer. *See Meleika v. Fed. Gov't*, 2022 WL 2274544, at *4 (D.N.J. June 23, 2022) (McNulty, J.) (rejecting the defendant's arguments that the dismissal of his criminal charges entitled him to an "automatic win" on his false arrest and malicious prosecution claims).

Evankow is therefore entitled to summary judgment on counts 4, 5, and 6.

**V.      Conclusion**

Based on the foregoing, Evankow's motion for summary judgment (D.E. 44) is granted in its entirety, and McCoy's amended complaint (D.E. 24) is dismissed with prejudice since amendment would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (permitting dismissal without further leave to amend when amendment would be futile). An appropriate order accompanies this opinion.


Dated: December 4, 2024                                    /s Katharine S. Hayden
                                                           Katharine S. Hayden, U.S.D.J.